72 S.E.2d 838 (1952)
236 N.C. 321
VANCE S. HARRINGTON & CO.
v.
RENNER et al.
No. 310.
Supreme Court of North Carolina.
October 29, 1952.
*840 Laurence A. Stith, W. B. R. Guion, D. C. McCotter, Jr., New Bern, for Vance S. Harrington & Co., Inc., plaintiff, appellee.
R. A. Nunn, New Bern, for interveners, appellees.
R. E. Whitehurst, George B. Riddle, Jr., New Bern, for defendants, appellants.
DEVIN, Chief Justice.
Due to its proximity to the large reservation and air base of the United States Marine Corps at Cherry Point, the theretofore sparsely inhabited rural area adjoining soon became populated by thousands of persons who were drawn there by work within the Air Base, or who, because of relationship to members of the armed forces there stationed, found it convenient to reside in the vicinity, or who came to engage in business and trade. This created a housing situation which unless regulated seemed likely to produce inconvenience and discomfort. The Commanding Officer of the air base with the Board of Commissioners of Craven County undertook to provide the remedy by securing the passage of the Acts of 1949 and 1951 creating a Zoning Commission. The purpose was laudable, but we must examine the methods employed in the light of the Constitution and laws of North Carolina in order to determine whether these measures can be upheld against the attack made thereon by the defendants.
Every person owning property has the right to make any lawful use of it he sees fit, and restrictions sought to be imposed on that right must be carefully examined to prevent arbitrary, capricious or oppressive action under the guise of law.
This case involves consideration of the zoning laws of the state. Statutes which have been passed authorizing the governing bodies of municipal corporations to enact zoning ordinances prescribing that in certain areas only designated types of buildings may be erected and used have been generally upheld by the courts as an exercise of the police power of the State. Kinney v. Sutton, 230 N.C. 404, 53 S.E.2d 306; Appeal of Parker, 214 N.C. 51, 197 S.E. 706; Town of Ahoskie v. Moye, 200 N.C. 11, 156 S.E. 130; Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303.
By Chapter 250, Laws of 1923, now codified as G.S. § 160-172 et seq., the General Assembly "For the purpose of promoting health, safety, morals or the general welfare of the community" granted to the legislative bodies of cities and towns power to regulate the use of real property in respect to the character and purpose of buildings to be erected therein, to divide the municipality into zones in accord with a comprehensive plan, and to provide the manner in which such regulations should be established and enforced. This statute authorized the appointment by the municipality of a Zoning Commission to recommend the boundaries of the various districts and to recommend appropriate regulations to be enforced therein. It is provided that the Zoning Commission should make preliminary report, hold hearings, and thereafter submit its final report to the legislative body of the city. For the further carrying out of the zoning ordinances the statute prescribes that the legislative body of the municipality may provide for the appointment of a board of adjustment which shall hear and decide appeals from and review orders of administrative officials charged with enforcement of any ordinance adopted pursuant to the statute, and shall hear and decide all matters referred to it or upon which it is required to pass under the ordinance, subject to review by certiorari. Appeal may be taken by any person aggrieved or by the officers of the municipality.
It will be noted that the power is conferred upon municipal corporations to enact ordinances dividing the municipality into districts or zones of a planned and *841 comprehensive nature, and to establish regulations or restrictions therein as to the character, style and purpose of buildings. This is an enlargement of the corporate powers of the municipality and is predicated upon proper exercise of police power for the purpose of promoting the general welfare of the community. The Act authorizing cities and towns to enact zoning ordinances recognizes that these measures must find their justification in some aspect of the police power. Kinney v. Sutton, 230 N.C. 404, 53 S.E.2d 306; Lee v. Board of Adjustment, 226 N.C. 107, 37 S.E.2d 128, 168 A.L.R. 1; Appeal of Parker, 214 N.C. 51, 197 S.E. 706; Elizabeth City v. Aydlett, 201 N.C. 602, 161 S.E. 78; Harden v. City of Raleigh, 192 N.C. 395, 135 S.E. 151. As was said by Justice Ervin, speaking for the Court in City of Raleigh v. Fisher, 232 N.C. 629, 61 S.E.2d 897, 902: "In enacting and enforcing zoning regulations, a municipality acts as a governmental agency and exercises the police power of the State. (Citing cases.) The police power is that inherent and plenary power in the state which enables it to govern, and to prohibit things hurtful to the health, morals, safety, and welfare of society."
In the case at bar, however, power to enact zoning regulations applicable to the rural area near Cherry Point was not based upon authority given by statute to municipal corporations. The power given to municipalities by G.S. § 160-172 was to be exercised by enacting zoning ordinances, and implementing that power by the appointment of a zoning commission to plan and a board of adjustment to supervise. The Act of 1949 creates a zoning commission and declares it shall have the same power given municipal corporations and provides that appeals from the zoning commission may be had to the Board of Commissioners of Craven County, and that the Board of Commissioners shall act as a board of adjustment.
Conceding, without deciding, that the General Assembly has the power under the Constitution to empower a County Board of Commissioners to enact ordinances providing for zoning districts in the rural areas of the county, here the Act of 1949 has not done this. Apparently the cart is placed before the horse. It is the Zoning Commission according to the complaint which under the Act prescribed the regulations now sought to be enforced. In James v. Sutton, 229 N.C. 515, 50 S.E.2d 300, 301, it was said: "The power to zone is conferred upon the governing body of the municipality. * * * That power cannot be delegated to the Board of Adjustment."
While the General Assembly may delegate power to a municipal corporation to enact zoning ordinances in the exercise of police power of the State, 11 A.J. 934 988, it must be remembered that though counties are bodies politic and corporate, created by the State for certain public purposes, they are not in strict legal sense municipal corporations as are cities and towns, but are rather instrumentalities of the State by means of which the State performs governmental functions within its territorial limits. Martin v. Board of Com'rs of Wake, 208 N.C. 354, 180 S.E. 777; Jones v. Madison County Com'rs, 137 N.C. 579, 50 S.E. 291. The General Assembly has not delegated to the Zoning Commission in this case the power of eminent domain, Yarborough v. North Carolina Park Commission, 196 N.C. 284, 145 S.E. 563, nor does it attempt to exercise that power.
True, in the case at bar the zoning regulations formulated by the statutory commission were submitted to and adopted by the Board of County Commissioners of Craven County in November 1950, but that Board had not enacted any zoning ordinances. Its only action was to appoint four of the five members of a zoning commission already in existence. The Act provides that appeals from decisions of the Zoning Commission should be to the Board of Commissioners, and in addition to its appellate functions it was to serve as board of adjustment. In neither capacity was any action taken, and the next appearance of the County Board was to intervene in this suit in June 1952. Here no municipal corporation was in existence and none was created by the Act, nor can we conclude that it was within the legislative intent that the Commission it created should possess *842 the functions of a municipal corporation, or exercise the police power of the State.
It also appears from the complaint that the zoning regulations, for violation of which this suit was instituted, were formulated and promulgated by the Zoning Commission when of that five-man body only the two residents of Craven County and the naval officer appointed by the Commandant of the Air Base were present and acting. The naval officer, Commander Albers, a resident of Tennessee, was residing within the area of the Cherry Point Federal Air Station.
It is declared in the Act of 1949, and also in that of 1951, that members of the Zoning Commission should be considered as holding office as commissioners for a special purpose within the meaning of art. XIV, sec. 7, of the State Constitution. But it would seem that the comprehensive nature of the duties prescribed by the Act of 1949, which involve relations with the public and the exercise of judgment and discretion in matters concerning property rights, should bring the members of this Zoning Commission within the definition of public officers. The office was created by the General Assembly and the duties imposed involve decisions as to property from which an appeal would lie. One who holds a public office is a public office holder. The absence of substantial compensation is immaterial. The following decisions of this Court support this view. Harris v. Watson, 201 N.C. 661, 161 S.E. 215, 79 A.L.R. 441; Groves v. Barden, 169 N.C. 8, 84 S.E. 1042, L.R.A.1917A, 228; In re Advisory Opinion, 226 N.C. 772, 39 S.E.2d 217; Bryan v. Patrick, 124 N.C. 651, 662, 33 S.E. 151; State (Attorney General) v. Knight, 169 N.C. 333, 85 S.E. 418; Eliason v. Coleman, 86 N.C. 235; Clark v. Stanley, 66 N.C. 59; 42 A.J. 880.
Declaring it not a public office does not make it so or render the incumbent immune from the ordinary requirements of public office holding. Clark v. Stanley, 66 N.C. 59. However, failure to take an oath of office, while it might subject one exercising the duties of the office to a penalty, G.S. § 128-5, would not deprive his acts of the validity given those of de facto officers performing the duties of a de jure office. Bryan v. Patrick, 124 N.C. 651, 33 S.E. 151; Clark v. Stanley, 66 N.C. 59; Wrenn v. Kure Beach, 235 N.C. 292, 69 S.E.2d 492. But to hold membership in the Zoning Commission as created by the Act of 1949 to be a public office would affect the right of Commander Albers, for he was at the time holding office under the United States Government, with the result that he would be incapable of performing the duties of a public officer under the State. In such case he is neither a de facto nor a de jure officer. Edwards v. Board of Education, 235 N.C. 345, 70 S.E.2d 170.
The plaintiffs appellees call attention to the fact that the defendants have answered, and that an answer overrules a demurrer. But this rule is inapplicable when the demurrer is based on the insufficiency of the complaint to state a cause of action. City of Goldsboro v. W. P. Rose Builders Supply Co., 200 N.C. 405, 157 S.E. 58; Rosenbacher & Bro. v. Martin, 170 N.C. 236, 86 S.E. 785.
It may also be noted that in a suit to restrain violation of a zoning ordinance, both the individual alleging threatened injury to his property and the municipality may be parties plaintiff. City of Goldsboro v. W. P. Rose Builders Supply Co., supra; G.S. § 160-178.
We conclude that the zoning regulations formulated by the Zoning Commission under authority of Chap. 455, Session Laws 1949, and by which it is sought to restrict the right of the defendants to use their property for a lawful purpose must be held invalid, and that the demurrers to the complaint upon which restraining order was issued should be sustained, and the restraining order dissolved.
It is unnecessary to determine the question debated, whether the Acts of 1949 and 1951 referred to violate Art. II, section 29, of the Constitution.
Reversed.